UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRIAN B. DEVEREUX and RENEE DEVEREUX, )
        Plaintiffs, )
v. ) No. 3:17-CV-197-JRG-HBG
KNOX COUNTY, TENNESSEE, et al., )
        Defendants. )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Strike and Exclude Expert Witness Testimony [Doc. 67]. The parties appeared before the undersigned for a motion hearing on October 4, 2018. Attorneys Darren Berg and Richard Collins appeared on behalf of Plaintiffs. Attorney David Wigler appeared on behalf of Defendants. Accordingly, for the reasons more fully stated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion [**Doc. 67**].

**I.    BACKGROUND**

The Court will begin with the allegations in the Verified Second Amended Complaint and then turn to the procedural history in this case.

    **A.    Allegations in the Verified Second Amended Complaint**

Plaintiffs filed their Complaint on May 3, 2017, and later filed a Verified Second Amended Complaint ("Amended Complaint") [Doc. 27] on September 20, 2017. The Amended Complaint alleges that on or about June 3, 2016, Plaintiff Brian Devereux ("Plaintiff") entered the Knox

1

County Detention Center to turn himself in to serve the remainder of time for his minimum 48-hour sentence as a result of a DUI conviction. [*Id.* at ¶ 10]. At 17:10, Officer Mobley opened the door to the holding cell and looked inside. [*Id.* at ¶ 13]. During this time, Plaintiff did not move and was unresponsive. [*Id.*]. At 17:52, Officer Mobley entered the holding cell again to give two inmates their dinner, and during this time, Plaintiff did not move and was unresponsive. [*Id.* at ¶¶ 13-14]. Later, at 18:01, Officer Mobley entered the holding cell to collect trash and observe the room, and Plaintiff did not move and was unresponsive. [*Id.* at ¶ 15].

The Amended Complaint states that subsequently, at 18:50, Officer Nasser entered the room and pointed to Plaintiff. [*Id.* at ¶ 16]. Two inmates kicked Plaintiff's legs, but he did not move. [*Id.*]. Officer Nasser left the holding cell without checking on Plaintiff. [*Id.*]. Officer Nasser returned a few minutes later but did not make any attempts to determine whether Plaintiff was conscious or experiencing a medical emergency. [*Id.* at ¶ 17]. The Amended Complaint continues that at 19:38, Officer Mobley entered the cell and said something that prompted an inmate to point at Plaintiff. [*Id.* at ¶ 18]. Another inmate kicked Plaintiff's leg, but Plaintiff did not respond. [*Id.*]. Officer Mobley did not make any attempts to determine whether Plaintiff was experiencing a medical emergency. [*Id.*].

The Amended Complaint alleges that a number of officers continued to enter the holding cell, including Officer Frye, Officer Moore, and Officer Nasser, but they took no action to determine if Plaintiff was experiencing a medical emergency. [*Id.* at ¶¶ 19-21]. The Amended Complaint avers that a number of inmates in the holding cell told Defendants and perhaps other unknown jailers that Plaintiff was unconscious and unresponsive, but Defendants and the unknown jailers took no action. [*Id.* at ¶ 24]. Subsequently, between 22:41 and 22:47, Officer Grant and Officer Buren entered the holding cell, and one of the officers checked Plaintiff and then left the

cell. [*Id.* at ¶ 25]. Shortly thereafter, the officer returned with another officer who took Plaintiff's pulse. [*Id.*]. Several officers and a nurse entered the holding cell and began affording Plaintiff medical treatment. [*Id.* at ¶¶ 26-27]. The Amended Complaint states that Rural Metro Ambulance arrived to find Plaintiff lying on the floor inside of the nursing area and that he was hypotensive and hypoxic with a diminished respiratory drive with shallow breathing sounds. [*Id.* at ¶ 28]. He was unconscious and only responsive to pain. [*Id.*]. Plaintiff was transported to the University of Tennessee Medical Center ("UT Medical Center") for further care and treatment. [*Id.*].

The Amended Complaint states that Plaintiff was hospitalized at UT Medical Center from June 3, 2016, to June 13, 2016. [*Id.* at ¶ 29]. An MRI of his brain revealed "acute on subacute infarct involving bilateral cerebellar cortices with hemorrhagic component." [*Id.*]. The Amended Complaint alleges that in addition to the multiple strokes, Plaintiff sustained other injuries associated with the delayed care and treatment he received at the Knox County Jail. [*Id.*]. The Amended Complaint alleges Plaintiff sustained a permanent neurological injury. [*Id.* at ¶ 30].

The Amended Complaint alleges violations of 42 U.S.C. § 1983 for the failure to provide adequate medical care and negligence.

### B. Procedural History

On May 15, 2018, Plaintiffs served their Disclosure of Expert Testimony [Doc. 67-5], listing fourteen medical providers pursuant to Federal Rule of Civil Procedure 26(a)(2).[1] The disclosures with respect to all fourteen medical providers are relatively the same. For instance, the disclosures contain the identity of the healthcare provider and his/her role in attending to

---

[1] While the Court will refer to "fourteen medical providers," the Court observes that there are actually more than fourteen medical providers listed. Plaintiffs number the disclosures 1 through 14, but several of the disclosures contain multiple names. Further, the Disclosure lists Tammy Brawner and Gregory Brawner as Plaintiffs, which the Court believes to be a typographical error.

Plaintiff (e.g., Dr. Shields and Dr. Kravitz were the attending physicians who saw him in the emergency department on June 4, 2016). [Doc. 67-5 at 2]. Each disclosure provides the subject matter that each physician or healthcare provider intends to testify. The disclosures for thirteen physicians include an identical statement as follows: "The facts and opinions to which [the physician] are expected to testify include diagnosis, cause, and treatment, as well as the opinions of other health care providers with which they consulted."). [Doc. 67-5]. With respect to the paramedics, the disclosure states that they transported Plaintiff to UT Medical Center on June 3, 2016, and that they are expected to present evidence concerning his medical condition upon arrival to the Knox County Detention Facility and during the transport. [*Id.* at 1].

On May 16, 2018, Defendants filed motions for summary judgment [Docs. 48, 50]. The motions, in part, challenge Plaintiffs' ability to demonstrate that Plaintiff suffered a stroke during the time the officers had an opportunity to observe him, whether Plaintiffs can establish medical causation, and whether Plaintiff exhibited classic symptoms of a stroke when each officer entered the holding cell. In response to Defendants' motions, Plaintiffs requested additional time to respond, stating that they need expert medical proof. [Doc. 54]. The Court granted additional time so that Plaintiffs could obtain the medical proof and depositions that they believed were necessary to respond to Defendants' dispositive motions. [Doc. 59].

Plaintiffs filed their response to Defendants' motions for summary judgment on August 24, 2018. Relevant to the instant matter, Plaintiffs filed a Declaration of Kenneth J. Gaines. M.D. [Doc. 63-1]. Dr. Gaines was previously disclosed in the May 15 disclosure. Similar to the other disclosures, Dr. Gaines's May 15 disclosure states as follows: "Dr. Gaines is Mr. Devereux's treating neurologist. . . . Dr. Gaines is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 concerning the identity, history, nature, scope, treatment, and prognosis of

4

Plaintiff's neurological disorders stemming from the stroke and events giving rise to this action." [Doc. 67-5 at 5]. His disclosures continues, "The facts and opinions to which Dr. Gaines is expected to testify include diagnosis, cause, and treatment, as well as the opinions of other health care providers with which he consulted." [*Id.*].

In his Declaration, Dr. Gaines states that he was asked to evaluate Plaintiff as a treating and evaluating physician. [Doc. 63-1 at ¶ 4]. He submits that he was provided "a video by counsel of Plaintiff Devereux during his time in a holding cell at Knox County Jail and a Second Amended Complaint document dated September 20, 2017." [*Id.*]. Dr. Gaines opines:

> It is my opinion to a reasonable degree of medical certainty that Mr. Devereux suffered a cerebral infarction while incarcerated in Knox County jail in Knoxville at approximately 1700 on June 3, 2016. Because of the failure of the personnel at that jail facility to recognize his stroke symptoms, he was not transported in a timely manner that would have allowed him the opportunity to receive appropriate therapy such as a tissue plasminogen activator. . . . In this circumstance[,] Mr. Devereux was not transported in a timely fashion and as a result[,] he was deprived of the opportunity to receive this therapy which scientific data shows leads more likely than not to a good or excellent outcome in an ischemic stroke if this medication is received. The residual deficits which he suffers cognitive and gait deficits are the results of the failure to receive this therapy.

[*Id.* at ¶ 7].

Defendants move the Court to exclude all Plaintiffs' expert medical testimony, including Dr. Gaines.

## II. POSITIONS OF THE PARTIES

Defendants request [Doc. 67] that the Court exclude all expert medical testimony offered by Plaintiffs, including the Declaration of Dr. Gaines. Defendants state that on May 15, 2018, the deadline for expert witness disclosures, Plaintiffs served a Disclosure of Expert Testimony, listing fourteen (14) medical providers, who purportedly were not required to produce a report because

5

they were not retained or specially employed to provide expert testimony in this case. Defendants state that one of the medical providers identified is Dr. Gaines. Defendants assert that it is undisputed that Dr. Gaines was originally hired as a treating physician and that he provided treatment and evaluations of Plaintiff from September 2, 2016, through February 9, 2018. Defendants argue, however, that Dr. Gaines was later retained or specifically employed to provide expert testimony in this case. Defendants point to Dr. Gaines's Declaration, which was signed on August 10, 2018, six months after his last interaction with Plaintiff on February 9, 2018. In his Declaration, Dr. Gaines opines that Plaintiff suffered a cerebral infraction while incarcerated in Knox County Jail and that due to the failure of the personnel at the facility to recognize Plaintiff's symptoms, he was not transported in a timely matter to allow him to receive appropriate therapy.

Defendants assert that Dr. Gaines's Declaration is untimely under the Scheduling Order. Defendants explain that the Declaration was filed after the May 15 deadline. In addition, Defendants state that the Declaration was filed after the *Daubert* and discovery deadlines expired. Further, Defendants assert that Plaintiffs were required to disclose Dr. Gaines's opinions pursuant to Rule (26)(a)(2)(B) and that the disclosure on May 15 does not comply with Rule 26(a)(2)(B) or (C).

Plaintiffs filed a Response [Doc. 73] in opposition to the Motion. Plaintiffs state that Dr. Gaines was not required to provide a written report because he is a treating physician. Plaintiffs assert that Dr. Gaines was timely disclosed under the Scheduling Order in compliance with Rule 26(a)(2)(C). Plaintiffs state that Defendants cite no authority for their argument that because Dr. Gaines reviewed the jail video and other materials, he should be converted to a specially retained expert. Plaintiffs state that Dr. Gaines, like any good treating physician, obtained a history from Plaintiffs as part of the treatment and diagnosis progress. Plaintiffs submit that if the Court finds

6

that they should have disclosed Dr. Gaines pursuant to Rule 26(a)(2)(B), they request leave to do so now. Plaintiffs state only subjections (v) and (vi) to Rule 26(a)(2)(B) are missing, which are irrelevant to Defendants' objections. Plaintiffs assert that they properly disclosed Dr. Gaines under Rule 26(a)(2)(C) and that if the disclosure is ruled inadequate, the remedy is not exclusion.

Defendants filed a Reply [Doc. 76], asserting that Plaintiffs offered no evidence suggesting that Dr. Gaines formed his opinion as to causation during the course of diagnosis and treatment of Plaintiff and that no medical records have been produced indicating that Plaintiff suffered a stroke while at the detention facility. Defendants state that an expert report was required because Dr. Gaines's opinions go far beyond the medical records of Dr. Gaines's diagnosis and treatment.

Subsequently, after the hearing in this matter, the parties filed supplemental briefs, which the Court has also considered. In Defendants' Supplemental Brief [Doc. 83], they argue that Plaintiffs' counsel stated at the hearing that they do not intend to supplement their expert witnesses disclosures with respect to any other experts other than Dr. Gaines. Defendants state that Plaintiffs acknowledged at the hearing that their expert witness disclosures are deficient. Defendants state that Plaintiffs have not informed the Court on their progress or any attempt to correct the deficiencies in their expert disclosures.

Plaintiffs filed a Response [Doc. 86], asserting that the parties dispute whether Dr. Gaines is required to provide an expert report under Rule 26(a)(2)(B). Plaintiffs state that they have supplemented Dr. Gaines's disclosure to incorporate his Declaration. If the Court finds that Dr. Gaines should have been disclosed under Rule 26(a)(2)(B), Plaintiffs request that they be permitted to supplement because his declaration already satisfies subparts (i)-(iii), leaving only a list of his publications, rates, and a list of prior testimony in previous cases to be supplemented.

7

## III. ANALYSIS

During the hearing, Defendants argued that the expert disclosures are insufficient under Rule 26(a)(2)(B) and (C). Further, Defendants stated that Dr. Gaines's Declaration, which was filed in August 2018, goes beyond treatment and diagnosis and that he should have been properly disclosed pursuant to Rule 26(a)(2)(B).

Plaintiffs argued at the hearing that Dr. Gaines primarily utilized Plaintiff Brian Devereux's medical records when forming his opinion. Plaintiffs stated that they did not retain Dr. Gaines as an expert in this case. Plaintiffs argued that the last sentence in the May 2018 disclosure (i.e., "The facts and opinions to which Dr. Gaines is expected to testify include diagnosis, cause, and treatment, as well as the opinions of other health care providers with which he consulted.") constitutes a summary of facts and opinions and that his Declaration includes all of his opinions. Plaintiffs acknowledged that Dr. Gaines reviewed the video from the holding cell but explained that he did so in order to pinpoint the stroke because Plaintiff's oral history and medical records did not specify when it occurred. Later, at the hearing, Plaintiffs agreed that the May 2018 disclosure of Dr. Gaines was not the complete disclosure but argued that even if Dr. Gaines is required to file a Rule 26(a)(2)(B) report, his Declaration meets the main requirements.

In addressing the instant disputes, the Court finds it helpful to begin with the expert report requirements under Rule 26(a)(2) and then turn to the issues in the present matter.

### A. Requirements under Rule 26(a)(2)

Federal Rule of Civil Procedure 26(a)(2) governs expert disclosure requirements. Rule 26(a)(2)(B) provides, in relevant part, that expert witness disclosures "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony." In addition, Rule 26(a)(2)(B) provides as follows:

The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Generally, "a treating physician is not required to submit an expert report or disclosure under Rule 26(a)(2)(B) because a treating physician is not 'retained or specially employed to provide expert testimony in the case.'" *Taylor v. U.S.,* No. 2:04-cv-128, 2005 WL 5984597, at *1 (E.D. Tenn. Nov. 23, 2005) (quoting Rule 26(a)(2)(B)). Rule 26(a)(2)(C), however, still requires summary disclosures of the facts and opinions to be offered by such expert witnesses even if they are not required to provide the detailed report under Rule 26(a)(2)(B).

Specifically, Rule 26(a)(2)(C) states:

Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

9

Subsection (C) "appears to speak directly to experts, such as treating physicians, whose testimony often blurs the line between fact and opinion." *Call v. City of Riverside*, No. 3:13-cv-133, 2014 WL 2048194, at *3 (S.D. Ohio May 19, 2014) (quoting *Coleman v. Am. Family Mut. Ins. Co.*, 274 F.R.S. 641, 645 (N.D. Ind. 2011)). Thus, while treating physicians are not required to provide an expert report pursuant to Rule 26(a)(2)(B), the party offering the treating physician's opinion must provide the disclosures outlined in Rule 26(a)(2)(C).

### B. Plaintiffs' Expert Disclosures

The Court will first address Dr. Gaines's disclosure and his Declaration and then the Court will turn to the other healthcare providers.

#### 1. Dr. Gaines

Defendants assert that Dr. Gaines's disclosure provided on May 15, 2018, does not comply with Rule 26(a)(2)(C). Further, Defendants state that Dr. Gaines's Declaration goes beyond the diagnosis, cause, and treatment of Plaintiff's condition and that he should have been disclosure pursuant to Rule 26(a)(2)(B).

The Court will first discuss the May 15 disclosure and then turn to the August 2018 Declaration.

##### i. The May 15, 2018 Disclosure

The Court finds the May 15 disclosure of Dr. Gaines wholly inadequate under either Rule. His disclosure is nearly identical to the other disclosures, which merely provide, "The facts and opinions to which [the physician] is expected to testify include diagnosis, cause, and treatment, as well as the opinions of other health care providers with which he consulted." Even under Rule 26(a)(2)(C)'s considerably less extensive requirements, this disclosure is insufficient because it

does not provide a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). As one court explained:

> [A] summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient. Further, this Court finds that a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert relied in forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice.

*Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-CV-1081, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015); *see also Gleed v. AT&T Servs., Inc.*, No. 13-12479, 2016 WL 1451532, at *5 (E.D. Mich. Apr. 12, 2016) (quoting *Little Hocking Water Ass'n*). Dr. Gaines's disclosure provided in May fails to include any summary of facts and opinions and simply constitutes a statement of the topics. The fact that thirteen of the fourteen disclosures are nearly identical further demonstrates that the disclosures are wholly inadequate. Accordingly, the Court finds that the disclosure provided in May 2018 for Dr. Gaines is inadequate.

### ii. The August 10, 2018 Declaration

With respect to Dr. Gaines's Declaration, the issue before the Court is whether his role changed when he submitted the Declaration, thus triggering the requirements under Rule 26(a)(2)(B). The Sixth Circuit has addressed a similar issue. Specifically, in *Fielden v. CSX Transp., Inc.*, 482 F.3d 866 (6th Cir. 2007), the Court addressed whether a report was required before the treating physician could testify as to the cause of plaintiff's carpal tunnel syndrome. The district court excluded the treating physician, finding that the treating physician was an expert under Rule 26(a)(2)(B), and he did not file an expert report by the deadline. *Id.* at 869.

11

The Sixth Circuit reversed the district court's decision, explaining that Rule 26(a)(2)(B) does not require an expert report from a treating physician in the context of this case when he was simply testifying as to the cause of plaintiff's condition. *Id.* The Sixth Circuit reasoned that "doctors may need to determine the cause of an injury in order to treat it" and that "[d]etermining causation may therefore be an integral part of 'treating' a patient." *Id.* at 870.

The Court continued that the "biggest concern with permitting treating physicians to testify in all circumstances without providing expert reports is that this would permit circumvention of the policies underlying the expert report requirement." *Id.* The Court stated that "[a] party might attempt to avoid Rule 26(a)(2)(B)'s requirement by having a treating physician testify on an issue instead of having an expert do so." *Id.* The Sixth Circuit noted that "[s]ome courts have accordingly concluded that when the nature and scope of the treating physician's testimony strays from the core of the physician's treatment, Rule 26(a)(2)(B) requires the filing of an expert report from the treating physician." *Id.* "The determinative issue is the scope of the proposed testimony." *Id.* (quoting *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995)). The Court continued, "Under this purposive reading of Rule 26, a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Id.* at 871.

In ruling on whether to exclude the treating physician, the Sixth Circuit compared the facts to another case, *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804 (6th Cir. 2005), wherein the Court upheld the exclusion of a treating physician. *Id.* The Court explained that the "treating physician in *Mohney* reviewed a videotape of an accident and opined as to the cause of the patient's injury, and opined based, in part, on the tape." *Id.* The Court emphasized that in *Mohney*, there was no

evidence that the treating physician rendered his opinion during the course of plaintiff's treatment. *Id.*; *see also Avendt v. Covidien Inc.,* 314 F.R.D. 547, 559 (E.D. Mich. 2016) (explaining that following the 2010 Amendments and the addition of Rule 26(a)(2)(C), district courts continue to observes the restrictions on treating physician testimony that were articulated in *Fielden*).

In the instant matter, Dr. Gaines opines on the timing of the stroke, the failure of the jail personnel to recognize Plaintiff's stroke symptoms, and the cause of Plaintiff's residual deficits. Specifically, in his Declaration, Dr. Gaines refers to himself as a "treating and evaluating physician." [Doc. 63-1 at ¶ 2]. He states that he has reviewed the medical records, a video from the jail facility, and the Second Amended Complaint. [*Id.*]. He then opines that Plaintiff suffered a cerebral infarction while he was incarcerated and that due to the failure of the personnel at the jail facility to recognize his stroke symptoms, Plaintiff Brian Devereux was not transported in a timely manner to receive appropriate therapy." [*Id.* at ¶ 7]. He concludes, "The residual deficits which [Plaintiff] suffers including cognitive and gait deficits are the results of the failure to receive this therapy." [*Id.*].

The Court finds that Dr. Gaines has changed his role in this case by authoring the August Declaration. First, the Court notes that Dr. Gaines prepared his Declaration long after his last visit with Plaintiff in February 2018. Second, the May 2018 disclosure, albeit insufficient, states that Dr. Gaines is expected to testify to "diagnosis, cause, and treatment." The Declaration goes well beyond "diagnosis, cause, and treatment" and discusses when Plaintiff suffered from his stroke and that the personnel at the jail failed to recognize his stroke symptoms. These opinions do not relate to diagnosis, cause, and treatment. Further, Dr. Gaines was able to articulate an approximate time that Plaintiff suffered his stroke. One can only conclude that Dr. Gaines arrived at his opinion, not by his personal knowledge, but by reviewing the video of the holding cell, which he

acknowledged in his Declaration that he reviewed. *See Mohney*, 138 F. App'x at 811 (upholding the exclusion of certain paragraphs of the physician's affidavit because the physician's opinion was formed in part by viewing the video of the incident, his affidavit was prepared long after the incident occurred, and there was no evidence that the physician reached the same conclusions at the time he treated plaintiff).

Accordingly, the Court finds that Dr. Gaines should have been disclosed pursuant to Rule 26(a)(2)(B). Because his full report was not provided until August, well beyond the expert disclosure deadline of May 15, 2018, the Court finds his Declaration untimely. Further, as Plaintiffs acknowledged, the Declaration does not include all the requirements pursuant to Rule 26(a)(2)(B), and therefore, the Declaration is insufficient.

### iii. Sanctions

At the hearing, Plaintiffs argued that even if the Court finds that Dr. Gaines should have been disclosed pursuant to Rule 26(a)(2)(B), exclusion is not the remedy. Defendants argued that they were prejudiced by the untimely and insufficient disclosures because the *Daubert* and discovery deadlines have already expired.

Rule 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts have explained, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a); that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Hunt v. Hadden*, 127 F. Supp. 3d 780, 789 (E.D. Mich. 2015), *aff'd*, 665 F. App'x 435 (6th Cir. 2016) (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th

14

Cir. 2003)) (other citations omitted). Further, courts have explained that "exclusion of expert testimony is the 'standard sanction' for a violation of Rule 26." *Id.* (citing *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 305 (1st Cir. 1999)). The burden is on the potentially sanctioned party to prove harmlessness. *Id.* (citing *Roberts ex rel. Johnson*, 325 F.3d at 782).

The Court has considered the parties' arguments and finds that Plaintiffs' failure to timely and adequately provide Dr. Gaines's disclosure is harmless under these circumstances. Here, Plaintiffs requested additional time to respond to Defendants' motion for summary judgment, which challenged Plaintiffs' ability to establish that the stroke occurred in the jail. In their request, Plaintiffs stated that they needed additional time to provide their medical evidence, and the Court granted this request. Thereafter, Plaintiffs filed Dr. Gaines's Declaration. The Declaration was filed on August 10, 2018, ten months before the trial in this matter. The Court has also considered the prejudice to Defendants in allowing Dr. Gaines to testify in this case. Defendants assert that they have been prejudiced by the untimely, insufficient disclosure because certain deadlines have passed. The Court, however, has already allowed Dr. Gaines's deposition to proceed on November 28, 2018, thus limiting any prejudice to Defendants. Further, if Defendants believe that there are grounds to challenge Dr. Gaines's testimony pursuant to *Daubert*, the Court will entertain any motions to extend the *Daubert* deadline with respect to Dr. Gaines.[2]

Accordingly, the Court will not exclude Dr. Gaines from testifying in this cause. As Plaintiffs acknowledged, however, there is missing information from Dr. Gaines's disclosure and Declaration. Plaintiffs shall supplement this information on or before **November 21, 2018.**

---

[2] At the hearing, Plaintiffs stated that they would agree to an extension of the *Daubert* deadline.

### 2. Other Expert Medical Testimony

As mentioned above, Defendants request that all expert testimony be excluded because the disclosures are not sufficient. Plaintiffs did not specifically respond to Defendants' argument in their brief. At the hearing, Plaintiffs stated that they only wanted to supplement Dr. Gaines's disclosure.

The Court has already discussed the inadequacy of Dr. Gaines's May 15, 2018 disclosure. *See supra* III, B(1)(i). Because the disclosures contain nearly identical language, the remaining disclosures are deficient. Plaintiffs do not argue that the failure is substantially justified or harmless. *Hunt*, 127 F. Supp. 3d at 789 (explaining that the burden is on the potentially sanctioned party to prove harmlessness) (other citations omitted). In light of Plaintiffs' failure to respond, the Court finds that Plaintiffs did not satisfy their expert disclosure requirements under Rule 26(a)(2)(C) and that their failure is not substantially justified or harmless. Accordingly, the other healthcare providers are excluded from testifying as experts in this matter.

## IV. CONCLUSION

Accordingly, Defendants' Motion to Strike and Exclude Expert Witness Testimony [**Doc. 67**] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

ENTER:

_____
United States Magistrate Judge