UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BRIAN B. DEVEREUX and | ) | |
| RENEE DEVEREUX, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-197-JRG-HBG |
| | ) | |
| KNOX COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, Standing Order 13-02, and the Order of Referral [Doc. 120] by the District Judge.

Now before the Court are the following Motions: (1) Defendants' Renewed Motion to Strike and Exclude Dr. Gaines's Expert Opinions ("Renewed Motion") [Doc. 99]; (2) Defendants' Motion in Limine to Strike and Exclude Dr. Gaines's Expert Witness Testimony Under Rule 702 and *Daubert* ("*Daubert* Motion") [Doc. 102]; and Plaintiffs' Motion for a *Daubert* Hearing [Doc. 111]. The Motions are ripe and ready for adjudication. Accordingly, for the reasons further explained below, the Court **RECOMMENDS** that Defendants' Renewed Motion [**Doc. 99**] be **GRANTED**. The Court further **RECOMMENDS** that if the District Judge considers Defendants' *Daubert* Motion, that the *Daubert* Motion [**Doc. 102**] be **GRANTED IN PART** and that Plaintiffs' Motion [**Doc. 111**] be **DENIED**.

**I.     BACKGROUND**

The Court has detailed the background of this case in a previous Memorandum and Order [Doc. 91]. The Court finds, however, that the background is helpful in analyzing the instant issues.

1

Accordingly, the Court will begin with the allegations in the Verified Second Amended Complaint and then turn to the procedural history in this case.

A. **Allegations in the Verified Second Amended Complaint**

Plaintiffs filed their Complaint on May 3, 2017, and later filed a Verified Second Amended Complaint ("Amended Complaint") [Doc. 27] on September 20, 2017. The Amended Complaint alleges that on or about June 3, 2016, Plaintiff Brian Devereux ("Plaintiff") entered the Knox County Detention Center to turn himself in to serve the remainder of time for his 48-hour sentence as a result of a DUI conviction. [*Id.* at ¶ 10]. At 17:10, Officer Mobley opened the door to the holding cell and looked inside. [*Id.* at ¶ 13]. During this time, Plaintiff did not move and was unresponsive. [*Id.*]. At 17:52, Officer Mobley entered the holding cell again to give two inmates their dinner, and during this time, Plaintiff did not move and was unresponsive. [*Id.* at ¶¶ 13-14]. Later, at 18:01, Officer Mobley entered the holding cell to collect trash and observe the room, and Plaintiff did not move and was unresponsive. [*Id.* at ¶ 15].

The Amended Complaint states that subsequently, at 18:50, Officer Nasser entered the room and pointed to Plaintiff. [*Id.* at ¶ 16]. Two inmates kicked Plaintiff's legs, but he did not move. [*Id.*]. Officer Nasser left the holding cell without checking on Plaintiff. [*Id.*]. Officer Nasser returned a few minutes later but did not make any attempts to determine whether Plaintiff was conscious or experiencing a medical emergency. [*Id.* at ¶ 17]. The Amended Complaint continues that at 19:38, Officer Mobley entered the cell and said something that prompted an inmate to point at Plaintiff. [*Id.* at ¶ 18]. Another inmate kicked Plaintiff's leg, but Plaintiff did not respond. [*Id.*]. Officer Mobley did not make any attempts to determine whether Plaintiff was experiencing a medical emergency. [*Id.*].

The Amended Complaint alleges that a number of officers continued to enter the holding cell, including Officer Frye, Officer Moore, and Officer Nasser, but they took no action to determine if Plaintiff was experiencing a medical emergency. [*Id.* at ¶¶ 19-21]. The Amended Complaint avers that a number of inmates in the holding cell told Defendants and "perhaps other unknown jailers" that Plaintiff was unconscious and unresponsive, but Defendants and the unknown jailers took no action. [*Id.* at ¶ 24]. Subsequently, between 22:41 and 22:47, Officer Grant and Officer Buren entered the holding cell, and one of the officers checked Plaintiff and then left the cell. [*Id.* at ¶ 25]. Shortly thereafter, the officer returned with another officer who took Plaintiff's pulse. [*Id.*]. Several officers and a nurse entered the holding cell and began affording Plaintiff medical treatment. [*Id.* at ¶¶ 26-27]. The Amended Complaint states that Rural Metro Ambulance arrived to find Plaintiff lying on the floor inside of the nursing area and that he was hypotensive and hypoxic with a diminished respiratory drive with shallow breathing sounds. [*Id.* at ¶ 28]. He was unconscious and only responsive to pain. [*Id.*]. Plaintiff was transported to the University of Tennessee Medical Center ("UT Medical Center") for further care and treatment. [*Id.*].

The Amended Complaint states that Plaintiff was hospitalized at UT Medical Center from June 3, 2016, to June 13, 2016. [*Id.* at ¶ 29]. An MRI of his brain revealed "acute on subacute infarct involving bilateral cerebellar cortices with hemorrhagic component." [*Id.*]. The Amended Complaint alleges that in addition to the multiple strokes, Plaintiff sustained other injuries associated with the delayed care and treatment he received at the Knox County Jail. [*Id.*]. The Amended Complaint alleges Plaintiff sustained a permanent neurological injury. [*Id.* at ¶ 30].

The Amended Complaint alleges negligence and violations of 42 U.S.C. § 1983 for failing to provide adequate medical care.

## B.    Procedural History

The instant Motions relate to Plaintiffs' expert witness, Kenneth Gaines, M.D. ("Dr. Gaines"). Dr. Gaines's opinions have already been the subject of several motions and informal telephone conferences. Thus, the Court will outline the procedural history as it relates to Dr. Gaines's opinions.

On May 15, 2018, Plaintiffs served their Disclosure of Expert Testimony [Doc. 67-5], listing fourteen medical providers pursuant to Federal Rule of Civil Procedure 26(a)(2).[1] The disclosures for all fourteen medical providers are relatively the same. With respect to Dr. Gaines's disclosure, it states as follows: "Dr. Gaines is Mr. Devereux's treating neurologist. . . . Dr. Gaines is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 concerning the identity, history, nature, scope, treatment, and prognosis of Plaintiff's neurological disorders stemming from the stroke and events giving rise to this action." [Doc. 67-5 at 5]. His disclosure continues, "The facts and opinions to which Dr. Gaines is expected to testify include diagnosis, cause, and treatment, as well as the opinions of other health care providers with which he consulted." [*Id.*].

On May 16, 2018, Defendants filed motions for summary judgment [Docs. 48, 50]. The motions, in part, challenge Plaintiffs' ability to demonstrate: (1) that Plaintiff suffered a stroke during the time the officers had an opportunity to observe him, (2) medical causation, and (3) that Plaintiff exhibited classic symptoms of a stroke when each officer entered the holding cell. In response to Defendants' motions, Plaintiffs requested additional time to respond, stating that they need expert medical proof. [Doc. 54]. The Court granted additional time so that Plaintiffs could

---

[1] The Court observes that there are actually more than fourteen medical providers listed. Plaintiffs number the disclosures 1 through 14, but several of the disclosures contain multiple names.

4

obtain the medical proof and depositions that they believed were necessary to respond to Defendants' dispositive motions. [Doc. 59].

Plaintiffs filed their response to Defendants' motions for summary judgment on August 24, 2018. Relevant to the instant matter, Plaintiffs filed a Declaration Dr. Gaines. [Doc. 63-1]. As mentioned above, Dr. Gaines was previously disclosed in the May 15 disclosure. In his Declaration, Dr. Gaines states that he was asked to evaluate Plaintiff as a treating and evaluating physician. [Doc. 63-1 at ¶ 4]. He submits that he was provided "a video by counsel of Plaintiff Devereux during his time in a holding cell at Knox County Jail and a Second Amended Complaint document dated September 20, 2017." [*Id.*]. Dr. Gaines opines:

> It is my opinion to a reasonable degree of medical certainty that Mr. Devereux suffered a cerebral infarction while incarcerated in Knox County jail in Knoxville at approximately 1700 on June 3, 2016. Because of the failure of the personnel at that jail facility to recognize his stroke symptoms, he was not transported in a timely manner that would have allowed him the opportunity to receive appropriate therapy such as a tissue plasminogen activator. . . . In this circumstance[,] Mr. Devereux was not transported in a timely fashion and as a result[,] he was deprived of the opportunity to receive this therapy which scientific data shows leads more likely than not to a good or excellent outcome in an ischemic stroke if this medication is received. The residual deficits which he suffers cognitive and gait deficits are the results of the failure to receive this therapy.

[*Id.* at ¶ 7].

Defendants moved to strike [Doc. 67] all expert medical testimony offered by Plaintiffs, including the Declaration of Dr. Gaines.[2] In a Memorandum and Order [Doc. 91] on November 13, 2018, the undersigned found that the May 15 disclosure of Dr. Gaines wholly inadequate under Rule 26(a)(2)(B) or (C). The Court further found that Dr. Gaines should have been disclosed

---

[2] The Court will only discuss its rulings as they pertain to Dr. Gaines.

5

pursuant to Rule 26(a)(2)(B) because Dr. Gaines submitted a Declaration in August 2018 opining on the timing of the stroke, the failure of the jail personnel to recognize Plaintiff's stroke symptoms, and the cause of Plaintiff's residual deficits. The Court further found that the August 2018 Declaration was untimely and that it did not include all the requirements pursuant to Rule 26(a)(2)(B). The undersigned, however, declined to exclude Dr. Gaines because the Declaration was filed on August 10, 2018, ten months before the trial date, and the Court allowed Defendants to depose Dr. Gaines. The Court ordered Plaintiffs, however, to supplement the information contained in Dr. Gaines's Declaration in accordance with Rule 26(a)(2)(B).

On November 20, 2018, Plaintiffs refiled Dr. Gaines's Declaration [Doc. 92] and also included his curriculum vitae, a list of cases that he was involved in, and his compensation. Subsequently, on November 26, 2018, the parties appeared before the undersigned for a telephonic discovery dispute. [Doc. 94]. During the telephonic conference, Defendants challenged Dr. Gaines's supplement arguing that it was still deficient under Rule 26(a)(2)(B). The Court found otherwise, *see* [*Id.*], and ordered the parties to proceed with Dr. Gaines's deposition on November 28, 2018.

On December 10, 2018, Defendants filed their Objections and Appeal from the Magistrate Judge's Order Construing Dr. Gaines's Disclosures as Sufficient Under Rule 26(a)(2)(B) ("Objections") and Renewed Motion [Doc. 99]. Specifically, Defendants objected to the undersigned's ruling that Dr. Gaines's Supplement was sufficient, and they renewed their motion to strike and exclude his expert opinions in this case. Plaintiffs did not respond to Defendants' Objections and Renewed Motion. On December 17, 2018, Defendants also filed their *Daubert* Motion. Plaintiffs requested an extension, until January 9, 2019, to respond to Defendants'

*Daubert* Motion but did not file a response. Thirty-one (31) days after Defendants filed their *Daubert* Motion, Plaintiffs requested a hearing [Doc. 111].

On March 20, 2019, the District Judge sustained [Doc. 120] Defendants' Objections. Specifically, the District Judge held, "The Court agrees with Defendants' arguments to the extent that [the undersigned's] order contains no indication he held the Devereuxs to their burden to show harmlessness." [Doc. 120 at 5]. The District Judge explained that the "sole focus should have been on whether the Deveruexs had fielded an argument of harmlessness and satisfied their burden by meeting the elements of harmlessness." [Doc. 120 at 6]. Thus, the District Judge sustained Defendants' Objections and referred Defendants' Renewed Motion to the undersigned for a report and recommendation.

The Court will now turn to Dr. Gaines's deposition, which was taken on November 28, 2018.

### C.    Deposition Testimony

Dr. Gaines testified that he is a neurologist at Vanderbilt Hospital. [Doc. 100-1 at 4]. He stated that he reviewed Plaintiff's medical records, including medical records from UT Medical Center, prior to treating Plaintiff. [*Id.* at 5]. He also reviewed medical records that he received from Plaintiffs' attorneys but could not recall when he reviewed those records. [*Id.* at 6].

Dr. Gaines testified that Plaintiff was never in a coma, but he was in a poorly responsive state and confused. [*Id.* at 13]. Dr. Gaines stated that during Plaintiff's detention, Dr. Gaines could not determine whether Plaintiff was comatose. [*Id.* at 13-14]. Dr. Gaines stated that he could not determine whether Plaintiff was in a coma from the video, although he could tell Plaintiff was neurologically impaired. [*Id.* at 14]. He testified that it has been awhile since he reviewed the video, but his recollection is that people jostled Plaintiff, and Plaintiff did not respond. [*Id.*].

Dr. Gaines testified that Plaintiff experienced a vertebral basilar stroke that affected the cerebellum on both sides of his brainstem. [*Id.* at 15]. Dr. Gaines stated that symptoms of this type of stroke may include decreased level of responsiveness, weakness on one or both sides, inability to walk, abnormal gait, pupillary abnormalities, eye movement abnormalities, difficulty moving the face, difficulty speaking, difficulty moving the tongue and swallowing, actual loss of vision, and bladder dysfunction. [*Id.* at 16-17]. Dr. Gaines opined that a vertebral basilar stroke can occur during sleep. [*Id.* at 18]. Dr. Gaines explained that he would not be able to observe the above symptoms in an individual who is sleeping but such an individual would have a decreased level of responsiveness. [*Id.* at 17-18].

Dr. Gaines testified that a good part of his evaluation of Plaintiff was trying to determine why Plaintiff had the stroke. [*Id.* at 19]. Dr. Gaines stated that the best evidence at this point is that Plaintiff experienced an embolic event from a proximal source, potentially his heart, that caused the stroke. [*Id.*]. When asked about his opinion that the stroke occurred at approximately 1700 hours, Dr. Gaines testified as follows:

> Well, there were a couple of things that led to decisions around timing of this stroke, and one was the CT scan that he had when he was admitted to UT in Knoxville. So the CT scan that he had when he was admitted already showed the presence of an infarct, which typically takes some hours to occur. It was in exactly the same place as we saw the lesions on the MRI scan, so it clearly was a stroke that was present then. And so it would take hours for that to form.
>
> A CT scan, just to be clear, would be typically normal if you happened to have a stroke right now, and it would be normal from some hours after that and then becomes abnormal. And so you can use that as a timing component of this.
>
> Then I think the video just tended to you know, to suggest that that was the case. I think clearly, when he has this – whatever occurred at the jail that was interpreted as a cardiorespiratory arrest or respiratory arrest or whatever, that ended up being – he was clearly having a stroke at that time.

8

> At the end of the video. And then the other thing that – you know, that you saw in the video was that he was up moving around. Obviously didn't have a stroke at that point. And then he – and then he became slumped over in the corner, and there was obviously something wrong at that point. And he was just too immobile for too long to be asleep.

[*Id.* at 21-22].

Dr. Gaines testified that it generally takes up to four to six hours for a stroke to appear on a CT scan. [*Id.* at 23]. Dr. Gaines testified that the stroke occurred before the nurses in the detention facility attended to Plaintiff. [*Id.* at 25]. He stated that typically, a vertebral basilar stroke gets worse before it gets better. [*Id.* at 26]. Dr. Gaines testified that when he watched the video, Plaintiff's symptoms did not change. [*Id.*]. When asked about his opinion in his Declaration that the stroke occurred at approximately 1700 hours, Dr. Gaines testified that his approximation is not within minutes but certainly could be within two hours but not three. [*Id.* at 27]. Dr. Gaines agreed that it was not two hours earlier because Plaintiff was walking around. [*Id.*].

Dr. Gaines testified that Plaintiff was having symptoms of a stroke while in detention and that the personnel at the facility failed to recognize the stroke. [*Id.* at 28]. Dr. Gaines stated that the personnel should have recognized that he was unresponsive. [*Id.*]. Dr. Gaines testified that Plaintiff could have been given a clot buster, a FDA-approved treatment, as long as it was administered within 4 ½ hours of his stroke. [*Id.* at 30].

Dr. Gaines testified that he first saw Plaintiff on September 2, 2016, approximately three months after the events alleged in the Amended Complaint. [*Id.* at 32]. He said that the timing of the stroke became an issue because he wanted to know when it occurred for purposes of Plaintiff's follow-up visit and because Plaintiffs had several questions about the stroke, such as why and when it occurred. [*Id.*]. Dr. Gaines testified that Plaintiffs provided a chronology of what had

occurred, and which was important information with respect to the timing of the stroke. [*Id.* at 34]. Dr. Gaines testified that the statement in his Declaration regarding Plaintiff's stroke (i.e., "Early in that incarceration, [Plaintiff] suffered a major neurological change with decrease in level of consciousness") was what Plaintiffs told him and that he relied on that information. [*Id.*]. Dr. Gaines agreed that Plaintiff could not relate such information if he was unconscious at the time, and Plaintiff Renee Devereux was not present at the detention facility. [*Id.* at 35]. He testified that he did not know where Plaintiffs received such information. [*Id.*]. Dr. Gaines later testified that Plaintiff was able to describe what happened up to that point and that was useful information. [*Id.* at 36].

Dr. Gaines could not testify to a reasonable degree of medical certainty, whether Plaintiff suddenly lost consciousness from a stroke or if the stroke occurred in his sleep. [*Id.* at 40]. Dr. Gaines testified that if the stroke occurred in his sleep, there were only general signs, such as Plaintiff's movements, the lack of movement, and the cardiorespiratory event. [*Id.* at 41]. He testified that in his original consultation note, he wrote, "In jail, [Plaintiff] developed sudden coma," because that is what Plaintiffs told him. [*Id.* at 54]. Dr. Gaines agreed that Plaintiff did not experience a coma but instead was unresponsive. [*Id.*]. Dr. Gaines acknowledged that he did not have all Plaintiff's medical records, including the Rural Metro ambulance record and the admission physical assessment. [*Id.* at 51-52, 55].

## II.     POSITIONS OF THE PARTIES

The Court will address the Motions in the order in which they were filed.

**A.**     **Defendants' Renewed Motion to Strike and Exclude Dr. Gaines's Expert Opinion**

Defendants move the Court [Doc. 99] to exclude Dr. Gaines's opinions for failing to comply with the expert disclosure requirements pursuant to Rule 26(a)(2)(B).[3]  Defendants argue that with respect to subsections (i)-(iii), Dr. Gaines's Declaration generally listed a number of items that may supply a basis for his opinion that Plaintiff suffered a cerebral infarction while incarcerated in Knox County jail at approximately 17:00 on June 3, 2016.  Defendants argue that Dr. Gaines did not explain the basis and reasons or the facts and data supporting this opinion and no notice of how and why Dr. Gaines reached the result was produced.  Defendants argue that Dr. Gaines's Supplement was insufficient and that Plaintiffs have not shown harmlessness. Defendants state that during the deposition, Dr. Gaines testified to facts that are not contained in his Supplement and that defense counsel learned after the deposition that Dr. Gaines's opinion is incorrect.  Thus, Defendants renew their Motion to Strike and request that the Court exclude Dr. Gaines's opinions.  Defendants argue that because Plaintiffs cannot show that the deficiencies are harmless, the undersigned's Order [Doc. 94] is clearly erroneous and contrary to law and Dr. Gaines's opinions should be stricken and excluded from the evidence.

Plaintiffs did not file a response to Defendants' Objections or the Renewed Motion.

**B.**     **Defendants' Motion in Limine to Strike and Exclude Dr. Gaines's Expert Witness Testimony Under Ruel 702 and *Daubert***

Defendants request [Doc. 102] that Dr. Gaines's opinion be excluded because during his deposition, he veered well beyond his Declaration, he expressed opinions not contained therein, and he relied on new facts and data.  Specifically, Defendants challenge two opinions: (1) Dr.

---

[3] As mentioned above, Defendants filed their Objections to the undersigned's ruling with their Renewed Motion [Doc. 99].

Gaines's opinion relating to the date and time of the stroke, and (2) Dr. Gaines's opinion relating to medical causation.

With respect to the former opinion, Defendants argue that Dr. Gaines's testimony veered beyond his Declaration, expressing opinions not contained therein. Defendants continue that during the deposition, they learned that a CT scan was the basis for Dr. Gaines's opinions, as opposed to the video. Defendants argue that this fact was not disclosed as a basis for his opinion. Furthermore, Defendants argue that Dr. Gaines's testimony was incorrect with respect to the timing of the stroke and that his opinion is not relevant. Defendants argue that Dr. Gaines's testimony does not rest on a reliable foundation.

Defendants also challenge Dr. Gaines's opinion that the delay in transporting Plaintiff to the UT Medical Center during the window of opportunity for stroke treatment caused a medical injury. Defendants assert that the physicians at the UT Medical Center did not diagnose Plaintiff with a stroke during the first four days of his hospitalization. Defendants argue that Dr. Gaines's opinion is not relevant or helpful because no reasonable jury could conclude that Plaintiff would have received treatment for a stroke within the window of opportunity, even if he had been transported earlier. Defendants argue that, alternatively, there is no medical or scientific basis for Dr. Gaines's opinion that a delay in several hours of transporting Plaintiff to the hospital caused him to be deprived of early treatment for stroke.

Plaintiffs did not file a response to Defendants' *Daubert* Motion.

### C.    Plaintiffs' Motion for a *Daubert* Hearing

Plaintiffs request [Doc. 111] that the Court hold a *Daubert* hearing. Plaintiffs state that Defendants' *Daubert* motion simply criticizes the opinions of Dr. Gaines as somehow unreliable or beyond the scope of Plaintiffs' amended expert disclosures. Plaintiffs state that they filed an

extension to respond to Defendants' *Daubert* motion, and the Court granted the extension. Plaintiffs state that due to miscommunication between their attorneys, a response was not timely filed. Further, counsel believed that *Daubert* motions would be referred for a hearing prior to trial, and Attorney Berg believed that no response was actually necessary, other than oral argument, as all of the evidence necessary for the response is already before the Court. Further, Plaintiffs assert that their lack of response does not prejudice Defendants because all the documents, evidence, and sworn testimony Plaintiffs intend to use at a *Daubert* hearing, already exists, have been served on Defendants, and are before the Court. Plaintiffs state that should the Court deny their request for a hearing, Defendants' *Daubert* Motion should be denied because defense counsel has only presented his arguments for exclusion.

Defendants filed a Response [Doc. 113], arguing that Plaintiffs are not entitled to a hearing because they failed to address the merits of the *Daubert* Motion. Defendants argue that it is Plaintiffs' burden to establish the admissibility of Dr. Gaines's testimony. Defendants argue that oral argument is unnecessary.

## III. STANDARD OF REVIEW

As mentioned above, Defendants challenge, in part, Dr. Gaines's opinions pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Rule 702. "[Rule] 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (quoting *Daubert,* 509 U.S. at 589). Specifically, Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

13

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert,* the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). Rule 702 inquiry as "a flexible one," and the *Daubert* factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138-39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 152 (3d Cir.1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty., Tenn.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138-39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in

the case." *Coffey*, 187 F. Supp. 2d at 70-71 (quoting *Daubert*, 509 U.S. at 593-94). The party

offering the expert has the burden of proving admissibility. *Daubert,* 509 U.S. at 592 n. 10.

Moreover, the Supreme Court has explained that in determining "whether the expert is

proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must

assess "whether the reasoning or methodology underlying the testimony is scientifically valid and

whether it can properly be applied to the facts in issue." *Id.* at 592–93. "Furthermore, the court

must examine the expert's conclusions in order to determine whether they can reliably follow from

the facts known to the expert and the methodology used." *In re Diet Drugs*, No. MDL 1203, 2001

WL 454586, at *7 (E.D. Pa. Feb. 1, 2001) (citing *Heller,* 167 F.3d at 153).

Finally, "the court will not exclude expert testimony merely because the factual bases for

an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir.

2012) (quotation marks and citations omitted). Exclusion is the exception, not the rule, and "the

gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the

adversary system.'" *Daniels v. Erie Ins. Group*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. Dec. 4,

2017) (quoting *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7

(W.D. Tenn. March 31, 2009)) (other quotations omitted). Rather, "[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

Rule 702 does not "require anything approaching absolute certainty." *Daniels*, 291 F. Supp. 3d at

840 (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010)).

## IV. ANALYSIS

The Court will first address Defendants' Renewed Motion and then turn to the *Daubert* issues.

### A. Renewed Motion

As mentioned above, Defendants' Renewed Motion was referred to the undersigned after the District Judge sustained Defendants' Objections. The Court notes that Plaintiffs did not file a response to the Renewed Motion, and the time for doing so has expired. *See* E.D. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."). In any event, the Court has reviewed the merits of Defendants' Renewed Motion and finds it to be well taken.

Defendants assert that during his deposition, Dr. Gaines veered beyond the statements in his Declaration. They assert that Dr. Gaines's Declaration generally listed a number of items that may supply a basis for his opinion. Defendants argue that they have been prejudiced by Dr. Gaines's insufficient Declaration and that Plaintiffs have not shown that the deficiencies are harmless.

The Court will begin with the requirements for expert disclosures pursuant to Rule 26(a)(2)(B).[4] Specifically, Rule 26(a)(2)(B) provides, in relevant part, that expert witness disclosures "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony." In addition, Rule 26(a)(2)(B) provides as follows:

> The report must contain:

---

[4] As noted above, the undersigned already determined that Dr. Gaines's role changed when he submitted the Declaration in August 2018.

16

(i)　　a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)　　the facts or data considered by the witness in forming them;

(iii)　　any exhibits that will be used to summarize or support them;

(iv)　　the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)　　a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)　　a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Rule 37 governs sanctions for the failure to provide expert witness disclosures. Rule 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts have explained, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a); that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Hunt v. Hadden*, 127 F. Supp. 3d 780, 789 (E.D. Mich. 2015), *aff'd*, 665 F. App'x 435 (6th Cir. 2016) (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)) (other citations omitted). Further, courts have explained that "exclusion of expert testimony is the 'standard sanction' for a violation of Rule 26." *Id.* (citing *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 305 (1st Cir. 1999)). The burden is on the potentially sanctioned party to prove harmlessness. *Id.* (citing *Roberts ex rel. Johnson*, 325 F.3d at 782).

17

As mentioned above, the Court directed Plaintiffs to supplement Dr. Gaines's disclosure on or before November 21, 2018. In response, Plaintiffs submitted the same Declaration of Dr. Gaines that was filed in August 2018 but also included Dr. Gaines's curriculum vitae, a list of cases that he was involved in, and his compensation. Defendants' Renewed Motion challenges the sufficiency of this Declaration.

The Court has reviewed the amended disclosure [Doc. 92] and finds that it fails to comply with Rule 26(a)(2)(B)(i)-(iii). The Sixth Circuit has explained, "[A]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from a logical foundation." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Brainard v. Am. Skandia Life Assur. Corp.,* 432 F.3d 655, 657 (6th Cir. 2005)). Specifically, the expert report "must include the 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.* (quoting *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir. 1998)).

Dr. Gaines's opinions in this case are set out in paragraphs 6 and 7 in his Declaration. [Doc. 92-1 at ¶¶ 6-7]. Defendants' primary challenge is that Dr. Gaines never disclosed his reliance on a CT scan that was taken on June 4, 2016, at approximately 4:37, for the purposes of providing an opinion on the time of Plaintiff's stroke. In his expert report, Dr. Gaines states that he relied on Plaintiff's medical records, including the evaluations performed at his direction, medical records from UT Medical Center and Plaintiff's primary care physician, and he also viewed the video from the detention facility. Further, Dr. Gaines states, "Upon review of his radiological studies, it was clear that [Plaintiff] had suffered a brainstem and cerebellar infarction." [*Id.* at ¶ 6]. He further opines, "It is my opinion to a reasonable degree of medical certainty that Mr. Deveruex suffered a cerebral infarction while incarcerated in Knox County jail in Knoxville

18

at approximately 1700 on June 3, 2016." [*Id.* at ¶ 7]. He does not explain the basis and reasons for this opinion as required under Rule 26(a)(2)(B).[5] Defense counsel learned during Dr. Gaines's deposition that this opinion was based on the timing of a CT scan and the video. *See* [Doc. 100-1 at 21-22].

The timing of Plaintiff's stroke has been a long, contested issue in this case. *See* [Doc. 44] (Defendants' Motion for Judgment on the Pleadings) ("The Complaint does not allege that Mr. Devereux had actually suffered a stroke at the time these officers entered the holding cell, and it is speculative to infer that Mr. Devereux in fact had a stroke while these officers were in a position to observe him in the holding cell."). Thus, the basis for Dr. Gaines's conclusion as to the timing of the stroke is critical information that was not provided in his expert disclosure.

As explained above, under Rule 37, it is Plaintiffs' burden show harmlessness or that the failure to properly disclose was substantially justified. Plaintiffs, however, never responded to the Renewed Motion.[6] Given that Plaintiffs did not respond to Defendants' Renewed Motion, the Court cannot find that the insufficient disclosure is harmless or substantially justified. Further, as Defendants emphasized, they have been prejudiced by Dr. Gaines's insufficient disclosure as many deadlines have expired in this case and Defendants were surprised by the new information during Dr. Gaines's deposition. *See Burke v. U-Haul Int'l*, No. CIV.A. 3:03CV32H, 2004 WL 5499520,

---

[5] In fact, the Court notes that the undersigned assumed that Dr. Gaines saw something on the video that led Dr. Gaines to believe that the stroke had occurred at a specific time at the detention facility. *See* [Doc. 91]. Plaintiffs even argued at the October 4 hearing that Dr. Gaines reviewed the video from the holding cell in order to pinpoint the stroke because Plaintiff's oral history and medical records did not specify when the stroke occurred. *See* [*id.* at 8].

[6] The Court notes that even after the District Judge issued the Memorandum and Order on March 29, 2019, referring the Renewed Motion to the undersigned, Plaintiffs did not request leave to file a response given the District Judge's findings.

19

at *2 (W.D. Ky. Dec. 7, 2004) ("The purpose of Rule 26(a)(2)(B) essentially is twofold—to eliminate unfair surprise to an opposing party and to conserve resources.").

As a final matter, the Court notes that the parties proceeded, as instructed by the undersigned, with Dr. Gaines's deposition on November 28, 2018. As courts have noted, "An expert may expound on his or her opinions during a deposition." *Crouch v. John Jewell Aircraft, Inc.*, No. 3:07-CV-638-DJH, 2016 WL 157470, at *6 (W.D. Ky. Jan. 12, 2016). "The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Id.* (quoting *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)). Rule 26(a)(2), however, does not allow deposition testimony to "cure a deficient expert report." *Id.* (citing *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)).

Accordingly, because the Court finds that Dr. Gaines's expert report is insufficient, and Plaintiffs have not argued otherwise or argued that the deficiency is harmless or substantially justified, the Court **RECOMMENDS** that Defendants' Renewed Motion [**Doc. 99**] be **GRANTED**.

### B. *Daubert* Motion

Although the Court recommends that Dr. Gaines be excluded from testifying as an expert witness in this case, the Court will also address Defendants' *Daubert* Motion. As an initial matter, Plaintiffs did not file a response to the *Daubert* Motion, and the time for doing so has expired. *See* E.D. Tenn. L.R. 7.1 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."). Plaintiffs request [Doc. 111] that the Court schedule a *Daubert* hearing, claiming that their counsel had a miscommunication about the filing of the response and believed that the *Daubert* Motion would be referred for a hearing. In addition, Attorney Berg states that no

response was necessary, other than oral argument at the hearing, as all of the evidence is before the Court.[7]

The Court declines Plaintiffs' request for a *Daubert* hearing. The Sixth Circuit has held that "[d]istrict court is not obligated to hold a *Daubert* hearing." *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). Plaintiffs do not explain why a *Daubert* hearing is necessary, and it appears to the Court that they requested the hearing because they missed their extended deadline to respond to Defendants' Motion. For instance, Plaintiffs request a *Daubert* hearing but do not state that Dr. Gaines intends to testify at the hearing and suggest that he would not be called to testify. *See* [Doc. 111 at 2] (Plaintiffs explaining that a response to the *Daubert* Motion was not necessary "other than *oral argument*") (emphasis added). Further, Plaintiffs state that "all of the evidence necessary for the response is already before the Court." [*Id.*]. Thus, the Court finds a *Daubert* hearing is not necessary, and the undersigned hereby **RECOMMENDS** that Plaintiffs' Motion for a *Daubert* Hearing [**Doc. 111**] be **DENIED**.

The Court will now turn to Defendants' *Daubert* Motion. Defendants challenge the following two opinions by Dr. Gaines: (1) the time and date of the stroke, and (2) that the delay in providing medical treatment for Plaintiff's stroke caused a medical injury. With respect to the timing and date of the stroke, Defendants state that Dr. Gaines used the word "approximately" to conceal the fact that he could not state to a reasonable degree of medical certainty that Plaintiff had the stroke before 19:00. The Court does not find that Dr. Gaines's use of the word "approximately" disqualifies his opinion. Defendants' argument is better suited for cross

---

[7] It is not clear why Attorney Berg believed a written response was not necessary as Plaintiffs filed a motion requesting an extension to file a response to Defendants' *Daubert* Motion, and their request was granted. *See also* E.D. Tenn. L.R. 7.2 (explaining that the failure to respond may waive any opposition to a motion). Their response was due on January 9, 2019. Instead, Plaintiffs moved for a hearing thirty-one (31) days after Defendants filed their *Daubert* Motion.

examination as opposed to grounds for exclusion. Further, Defendants argue that Dr. Gaines veered well beyond his Declaration and that he prepared the Declaration solely for purposes of litigation.[8] They further argue he presented new facts and data during his deposition. The Court has already addressed these arguments and finds it unnecessary to address them again.

In addition, Defendants assert that Dr. Gaines's opinion is "clearly wrong." [Doc. 102 at 6]. Defendants explain that Dr. Gaines testified that it takes four to six hours for a stroke to appear on a CT scan. Because of this delay, a CT scan is not helpful in diagnosing a stroke at the time a stroke occurs, but it is helpful in determining when a stroke occurred. Defendants state that Dr. Gaines believed that the CT scan was taken almost immediately when Plaintiff arrived at the UT Medical Center. Defendants state, "Applying his medical and scientific reasoning, Dr. Gaines must have believed that the CT scan was taken by 1:00 on June 4, 2016, which would be four to six hours after the 17:00 to 19:00 window during which he testified that the stroke occurred."

---

[8] It appears to the Court that Defendants used the phrase, "solely for purposes of litigation" to emphasize that Dr. Gaines is required to complete a written report pursuant to Rule 26(a)(2)(B), as opposed to arguing that Dr. Gaines is an expert for hire. "[T]his court views with special caution expert testimony prepared solely for purposes of litigation, rather than flowing from an expert's line of scientific or technical work." *In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 190 (6th Cir. 2012). In any event, the Court does not find that Dr. Gaines is an expert for hire. He is a board certified neurologist who treated Plaintiff after his stroke. Generally, courts find that an expert prepared his/her opinion solely for litigation when it appears that the expert is one "for hire" and the expert is only vaguely familiar with the subject matter. *See Johnson v. Manitowoc Boom Trucks, Inc*., 484 F.3d 426, 435 (6th Cir. 2007) (explaining that the expert "in many ways to be the quintessential expert for hire" because he "spent the last twenty plus years of his life testifying as an expert in a wide variety of design defect cases" and has only vague "familiarity with the particular type of machine in question"); *Simmons v. Novartis Pharms. Corp.,* 483 F. App'x 182, 190 (6th Cir. 2012) (properly excluding as unreliable because it was solely based on "six articles plaintiff's counsel gave him," he had "never written or edited any articles, abstracts, or books" which addressed the alleged causal factor, and "he had also never conducted any kind of laboratory or clinical study" of the alleged causal agent).

[Doc. 102 at 6]. Defendants argue that Dr. Gaines is wrong because Plaintiff had his CT scan at 4:37, several hours after Plaintiff arrived at the UT Medical Center.

As mentioned above, expert testimony must be reliable, and "Rule 702 guides the trial court by providing general standards to assess reliability," such as "whether the testimony is based on sufficient facts and data." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). A court cannot exclude an expert opinion simply because "the court believes one version of the facts and not the other." *Id.* (citing Fed. R. Evid. 702 advisory committee's note, 2000). "[T]he requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id.* (citing *Daubert,* 509 U.S. at 590). Further, "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529–30 (citing Fed. R. Evid. 702).

The Court has reviewed Dr. Gaines's Declaration and deposition testimony and finds that his opinion is unreliable with respect to the timing of the stroke. As mentioned above, Dr. Gaines opines in his Declaration: "It is my opinion to a reasonable degree of medical certainty that Mr. Devereux suffered a cerebral infarction while incarcerated in Knox County jail in Knoxville at approximately 17:00 on June 3, 2016." [Doc. 92-1 at ¶ 7]. The problem with this testimony is that Defendants have put forth evidence, which remains undisputed, that the CT scan was taken at 4:37 on June 4, 2016, *see* [Doc. 99-2 at 1], and not immediately upon Plaintiff's arrival at the UT Medical Center as Dr. Gaines testified. Dr. Gaines testifies that his opinion on the time of the stroke is based, in part, on the time of the CT scan. [Doc. 100-1 at 22] (explaining that he can use the CT scan as a timing component because a CT scan becomes abnormal four to six hours after a stroke). The timing of the CT scan is critical information that calls into question the reliability of

23

Dr. Gaines's opinion that the stroke occurred at approximately 17:00. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 ("That is not to say that a significant error in application will never go to the admissibility, as opposed to the weight, of the evidence. Indeed, the 2000 amendments to Rule 702 explain that an expert witness must "appl[y] the principles and methods reliably to the facts of the case.") (other citations omitted).

To be clear, Dr. Gaines simply testifies that a stroke takes four to six hours to appear on a CT scan, and the Court does not construe his testimony to mean that within seven hours of a stroke, the CT scan will appear normal. Thus, for instance, Dr. Gaines's opinion that the stroke occurred at 17:00 means that it would have appeared on Plaintiff's CT scan at 4:37. The Court does not question the accuracy of Dr. Gaines's opinion. *See In re Scrap Metal Antitrust Litigation*, 527 F.3d at 529 (finding defendant's argument unpersuasive because it confuses credibility and accuracy with reliability). Instead, the Court calls into question how Dr. Gaines arrived at his opinion, given he was incorrect and/or could not recall the time of the CT scan. Dr. Gaines agreed that the stroke did not occur before 17:00 because Plaintiff was walking around. [Doc. 100-1 at 27]. Although he opines that the stroke occurred at 17:00, he testified that the CT scan was taken immediately upon Plaintiff's arrival and then later testified that he needed an exact timeline of when the CT scan was taken. Other than the CT scan, the only other basis for his opinion with respect to the time of the stroke is the video, but he does not explain how the video supports his opinion that the stroke occurred at approximately 17:00.[9] Accordingly, based on these

---

[9] Dr. Gaines testified that he relied on the time stamp of the video to opine that the stroke occurred at 1700, but agreed that he was not sure whether Devereux suddenly lost consciousness from a stroke or had the stroke in his sleep. [Doc. 1001- at 40]. He then testified there were only general signs that were apparent on the video, such as the change in Plaintiff's movement and lack of movement. [*Id.* at 41].

24

deficiencies, the Court cannot find that Dr. Gaines' opinion on the time of the stroke is grounded on sufficient facts or data as required by Rule 702.

Finally, Defendants challenge Dr. Gaines's opinion regarding the window of opportunity for stroke treatment. Defendants assert that his opinion is not relevant because when Plaintiff arrived at UT Medical Center, the physicians did not diagnose Plaintiffs with having a stroke, and therefore, no reasonable juror could conclude that Plaintiff would have received treatment within the window of opportunity. Defendants argue that the physicians at the UT Medical Center did not diagnose Plaintiff with having a stroke within the first four days of hospitalization. In the alternative, Defendants assert that there is no medical or scientific basis for Dr. Gaines's opinions.

The Court finds that Defendants' argument that UT Medical Center did not diagnose Plaintiff with a stroke, and therefore, would not have timely received the treatment, more appropriate for cross examination, rather than a basis for exclusion. With respect to Defendants' argument that there is no medical basis or scientific basis for Dr. Gaines's opinion, Dr. Gaines explains that the treatment, if received within the window of opportunity, is approved by the Food and Drug Administration, widely accepted as effective based on multiple randomized clinical trials and is part of appropriate clinical care as outlined in multiple Stroke Treatment Guidelines from the American Academy of Neurology and the American Heart and Stroke Association, and is routinely offered at my hospital emergency facilities. [Doc. 92-1 at 4]. He deposition testimony is similar. Given his testimony, coupled with Dr. Gaines's qualifications, the Court does not find Defendants' argument well taken.

## V.     CONCLUSION

Accordingly, for the reasons further explained above, the Court **RECOMMENDS**[10] that Defendants' Renewed Motion to Strike and Exclude Dr. Gaines's Expert Opinions [**Doc. 99**] be **GRANTED**.  If the District Judge considers Defendants' Motion in Limine to Strike and Exclude Dr. Gaines's Expert Witness Testimony Under Rule 702 and *Daubert* [**Doc. 102**], the undersigned **RECOMMENDS** that it be **GRANTED IN PART AND DENIED IN PART** and that Plaintiffs' Motion for *Daubert* Hearing [**Doc. 111**] be **DENIED**.

Respectfully submitted,

*Bruce Guyton*

United States Magistrate Judge

---

[10] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b).  Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).  "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'"  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).